CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
for Roanoke
FEB 21 2006
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DEBORAH LYNN STEVENSON, | ) | CASE NO. 7:05CV00013 |
| | ) | |
| Petitioner, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Respondent. | ) | U.S. MAGISTRATE JUDGE |

On January 11, 2005, Deborah Lynn Stevenson ("petitioner") filed a Petition to Vacate, Set Aside or Correct her Federal Sentence ("petition") under 28 U.S.C. § 2255, which she amended on January 31, 2005.[1] The United States moved to dismiss, and on September 14, 2005, the case was referred to the undersigned under the authority of 28 U.S.C. § 636(b)(1)(B) to conduct an evidentiary hearing and render to the presiding District Judge a report setting forth findings, conclusions and recommendations for the disposition of petitioner's claims. For the reasons that follow, the undersigned will RECOMMEND that the presiding District Judge enter an Order, DENYING the petition and DISMISSING this action from the docket of the court.

### FACTUAL BACKGROUND

On May 15, 2003, petitioner was indicted by the Grand Jury for the Western District of Virginia in a single count indictment for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *United States of America v. Deborah Stevenson*, Criminal No. 1:03CR00053. On September 9, 2003, petitioner entered a plea of guilty to the charge and eventually was sentenced to a mandatory minimum term of fifteen years imprisonment to be

---

[1] The amended petition was file stamped on January 31, 2005, but apparently not entered on the docket until February 3, 2005. (Dkt Rpt No. 8.)

followed by a period of five years supervised release and a special assessment of $100. At all relevant times, petitioner was represented by assigned counsel, Brian M. Ely, Esq.

Stevenson has asserted several claims upon which relief should be granted, namely: 1) the court erred by sentencing her as an armed career criminal; 2) if her attorney had provided her with adequate representation, it is likely her sentence would not have been enhanced; 3) she received an inordinate sentence because of the sentence enhancement; and finally, 4) her counsel was ineffective for failing to appeal the issue of her sentence enhancement. On April 7, 2005, the government moved to dismiss. The presiding District Judge took under advisement the motion and referred the case to the undersigned footnoting in his September 14, 2005 Order that, under *United States v. LeMaster*, 403 F.3d 216 (4th Cir. 2005), petitioner had entered into a valid plea agreement waiving her right to raise all issues asserted in the instant petition except the one relating to ineffective assistance of counsel for failing to file an appeal. On September 19, 2005, the undersigned appointed counsel to represent petitioner to advance the instant action on her behalf, and, on December 1, 2004, an evidentiary hearing was held before the undersigned on the remaining claim.[2]

## EVIDENCE PRESENTED

In addition to the trial court record, some of which was reintroduced during the evidentiary hearing, the undersigned heard testimony presented by both petitioner and her former counsel, Ely. That evidence is summarized below.

---

[2]At the conclusion of the proceedings, petitioner sought leave to file a post-hearing brief, and the government sought time in which to respond. Petitioner filed a memorandum in support of her petition within the time permitted by the court, and on February 6, 2006, after the time had expired for it respond, the government informed the undersigned it had elected to forego any response.

2

## BRIAN M. ELY, ESQ.

Brian M. Ely ("Ely") is a Virginia attorney licensed since October 1991 and is engaged in a mixed practice of real estate and criminal law located in Abingdon, Virginia. At the time Ely represented petitioner, about thirty percent of his practice was devoted to defending criminal cases in the state and federal courts, and he had been a member of this court's CJA panel for about five years. Ely testified that he had defended "hundreds" of criminal cases with about twenty, or so, as a CJA attorney. From the beginning of his representation of petitioner, Ely knew she was charged with being a felon in possession of a firearm, and he learned that she faced a sentencing enhancement as a career criminal.

Ely met with petitioner between five and ten times before the scheduled date of her trial. He filed discovery in the case and provided that information to petitioner for review. According to Ely, "the problem" in Stevenson's defense was that she faced the prospect of being an armed career criminal because she had at least twenty-five convictions on different dates and sentencing in four jurisdictions.

Ely testified that prior to the date set for trial, petitioner had resisted pleading guilty. However, as the parties assembled on the trial date, they were advised that the trial judge was ill, thus necessitating a continuance. Ely stated that after learning that the trial would be continued, petitioner became interested in pleading guilty. He recalled that the plea agreement was literally put "on the table" before the petitioner, and that, after reviewing every provision of the agreement with her, and, after making one modification, petitioner accepted the agreement, initialed each page and signed the final page.

Petitioner and Ely appeared before the Hon. Pamela Sargent, United States Magistrate

3

Judge, in a plea proceeding, the transcript of which was introduced into evidence in this action. Petitioner was informed during the plea proceeding that she was waiving her trial rights and her right to collaterally attack, but that she was not waiving her right to appeal any issues relating to sentencing. (Tr. Plea Proceedings, pp. 11-18; Def's Ex. 6.) The Magistrate Judge filed a Report and Recommendation recommending that the Honorable Glen M. Williams, presiding District Judge, accept petitioner's plea, find her guilty and impose an appropriate sentence. He accepted the Recommendation.

The parties then appeared before Judge Williams at a sentencing hearing on February 26, 2004, the transcript of which has been received into evidence. (Tr. Sentencing Hearing, Def's Ex. 7.) Ely related in his testimony before the undersigned that, initially, he had objected to provisions of the pre-sentencing report suggesting that petitioner be sentenced as a career criminal and was prepared to present argument on her behalf at her sentencing hearing. However, petitioner expressed a desire that he not present argument, and she declined to testify. Instead, she had prepared and intended to read a statement of her own to the court. Petitioner had not informed Ely of her intentions to offer this statement until the day of the hearing.

After hearing from petitioner, the court sentenced her to the mandatory minimum 180 months. Then, Judge Williams advised petitioner of her right concerning an appeal. After the sentencing proceeding ended, the court promptly entered a final judgment and commitment Order closing the case.

Immediately following the sentencing proceeding, Ely returned to his office and dictated a Memo To File ("Memo"), detailing the events which had occurred. (Def.'s Exhibit 9.) In that Memo, Ely noted that he had advised petitioner of her right to appeal, though she did not ask him

4

to file an appeal. (*Id.* at p. 3.) Ely further explained that his and petitioner's primary concern at that juncture was to take steps toward providing substantial assistance. He further noted that petitioner, in fact, had been providing additional information to the government. Ely informed that he then believed filing an appeal would or could foreclose any later opportunity for petitioner to negotiate with the government for a later reduction in her sentence.

More than that, Ely testified that petitioner had never told him she wanted to challenge her fifteen-year sentence, and that she had never requested that he appeal on her behalf. It was not until Ely received a Freedom of Information request dated August 24, 2004, seeking a copy of Stevenson's file which purportedly included an "appeal letter," that the notion of appeal was mentioned. It was not until Stevenson filed the instant § 2255 motion alleging Ely acted ineffectively by failing to file an appeal that he learned petitioner had a desire to appeal her sentence. Ely stated that, if petitioner had instructed him to appeal, he would have done so, even if he personally believed that the appeal was frivolous.[3]

## DEBORAH LYNN STEVENSON

Petitioner testified that she signed the plea agreement which did not provide for a waiver of the right to appeal. According to Stevenson, she had discussions with Ely about whether she could receive a reduced sentence during which she instructed him "to do everything he could to get less than fifteen years." Stevenson further admitted that, after sentencing, she did not have any discussions with Ely or consult with him about an appeal. Instead, petitioner recalls telling him to "file anything that could help." All the while, petitioner "wanted to pull back from [her]

---

[3]Ely testified that, upon petitioner's request, he would have noted an appeal accompanied by a brief under *Anders v. California,* 386 U.S. 738 (1967).

5

Case 7:05-cv-00013-JCT-BWC    Document 26    Filed 02/22/06    Page 5 of 12    Pageid#: 186

plea," but Ely advised "that [he] couldn't do that." Petitioner testified that communication with Ely was difficult because he would not accept her phone calls to his office to discuss the case. Petitioner testified that Ely never inquired about her desire to appeal, even though he well knew she disputed her designation as an armed career criminal.

On cross examination, Stevenson acknowledged her guilty plea to and conviction of some eleven (11) counts of burglary in McDuffie County, Georgia and eight (8) counts of burglary in Columbia County, Georgia. (Def.'s Exhibits 13, 14.) She also testified that, after being sentenced by Judge Williams, she had no further conversation with Ely about an appeal.

In addition to the testimony and the exhibits noted above, the undersigned has examined the transcripts of the September 9, 2003 plea proceedings and February 26, 2004 sentencing hearing. During his colloquy at the sentencing hearing, Judge Williams informed petitioner of the rights she was waiving by pleading guilty, and stated:

> You have a right to appeal. To do so you must do it within a matter of ten days. I'm sure your counsel will render assistance in this matter. If you need further assistance the Clerk of the Court will advise you how to enter into an appeal should you desire to do so.

(Sentencing Hearing, p. 15.)

## LEGAL PRINCIPLES

### Ineffective Assistance of Counsel Standard

In order to establish that petitioner's trial counsel provided ineffective assistance, she must show: (1) that her counsel's performance was objectively unreasonable, and (2) that she was prejudiced by the deficient performance in that there is a reasonable possibility that the outcome would have been different if not for her counsel's deficiency. *Strickland v. Washington*,

6

466 U.S. 668, 692-94 (1984); *Frazer v. South Carolina*, 430 F.3d 696, 703 (4th Cir. 2005). A claim of ineffective assistance may arise when trial counsel fails to consult with a defendant regarding her right to appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 477-80 (2000).

In connection with whether counsel's conduct was objectively reasonable, it is recognized that, generally, but not always, counsel has a duty to consult. *Id.* at 479. Counsel has a constitutionally imposed duty to consult where "there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that [s]he was interested in appealing." *Id.* at 480. Thus, what counsel knew or should have known about the client's interests in appealing is important, and factors relevant to that inquiry include whether the conviction followed a guilty plea which, itself, "reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* There are several factors to consider in determining whether there is a reasonable potential the defendant would have appealed but for counsel's failure to consult. *Id.* at 485. For example, the court may assess whether there were any non-frivolous grounds for appeal, and it is appropriate to inquire whether the defendant promptly informed counsel of a desire to appeal. *Id.*

It is professionally unreasonable *per se* for trial counsel to disregard a defendant's request to appeal. *Id.* at 477 (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)). To put it another way, a defendant has the right to pursue a direct appeal, even if frivolous, and counsel on notice of a client's desire to exercise that right must assist as "an active advocate in behalf of his client," even if counsel's advocacy honestly informs the court concerning the merits of the appeal and counsel seeks to withdraw. *Anders v. California*, 386 U.S. 738, 744 (1967); *Frazer*, 430 F.3d at

7

707. If the defendant has neither instructed counsel to file an appeal nor directed that no appeal be taken, the court must determine whether counsel "consulted" with the defendant. *Flores-Ortega*, 528 U.S. at 478.

The term "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* If counsel has consulted with the defendant, then his representation is unreasonable only if he failed to heed the defendant's express instructions to appeal. *Id.* When, however, counsel does not consult with the defendant, there is no bright line rule that his representation was professionally unreasonable. *Id.* at 479. Instead, the court must decide whether consultation was necessary under the circumstances. *Id.* at 479-480. An example of when counsel's failure to consult would not constitute professionally unreasonable representation was offered by the Court in *Flores-Ortega* as follows:

> [S]uppose a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult. In some cases, counsel might then reasonably decide that he need not repeat that information.

528 U.S. at 479-480; *Frazer*, 430 F.3d at 708, n.9. Thus, in such cases the inquiry necessarily involves whether the defendant received clear and informative instructions from the court which are sufficient to substitute for any failure on the part of counsel to consult with the defendant about an appeal.

## CONTENTIONS OF THE PARTIES

### Petitioner

Petitioner argues that, under *Flores-Ortega*, the court should grant her a delayed direct

8

appeal[4]. She stands on counsel's duty to consult and argues that the greater weight of the evidence supports a finding that Ely did not consult with her about her an appeal. Essentially, petitioner points to Ely's own testimony, his February 26, 2004 Memo To File and his affidavit filed in this case to support her contention that he did not consult with her about her right to appeal.

Acknowledging her burden to establish that (1) a reasonable defendant would have wanted to appeal, or that (2) she reasonably demonstrated to Ely interest in appealing, petitioner first suggests that there were non-frivolous grounds upon which she could have filed an appeal. Specifically, petitioner argues that her state conviction record, which formed the predicate offenses for her armed career criminal status, failed to qualify her for that status under *Shephard v. United States*, 544 U.S. 13 (2005).[5] Petitioner also points out that the Georgia cases were consolidated into two sentencing hearings which provide a basis for arguing only two prior convictions for the purposes of sentencing under the Armed Career Criminal Act. Petitioner does concede, however, that such an argument is not consistent with the precedent in this Circuit, though she offers it would not have been frivolous for her to ask that the matter be revisited. *See United States v. Samuels*, 970 F.2d 1312, 1315 (4th Cir. 1992) (stating that neither 18 U.S.C. § 924(e) nor the Sentencing Guidelines requires offenses be tried or sentenced separately in order to count as separate predicate offenses).

---

[4]In her Memorandum in Support Of Petition, petitioner notes that she does not intend to waive any other relief requested in her § 2255 motion. (Plaintiff's Memorandum In Support Of Petition, p. 1.)

[5]Title 18, United States Code, Section 924(e), referred to as the Armed Career Criminal Act, mandates a fifteen year sentence for persons found to be in possession of a firearm after obtaining three prior violent felony convictions.

9

Next, petitioner contends that there is ample evidence to show she demonstrated an interest in appealing her sentence as a career offender. Certainly her plea agreement did not contain a waiver of her right to file an appeal. Petitioner also personally contended before the trial court at sentencing her belief that she was not an armed career offender, and she instructed Ely to do everything he could to avoid the fifteen year minimum sentence. Petitioner believes these factors were sufficient to alert Ely to the fact that she was interested in filing an appeal which, in turn, triggered his duty to consult with her about her right to file an appeal.

Petitioner argues that Ely's failure to consult with her about her right to file an appeal constitutes ineffective assistance of counsel. As such, petitioner concludes that the court should grant her a delayed direct appeal.

The government declined to file a brief in opposition to petitioner's Memorandum In Support Of Petition.

**FINDINGS AND CONCLUSIONS[6]**

From the evidence presented at the plenary hearing and the record as a whole, the undersigned finds as follows:

1. Petitioner's testimony that she asked Ely to do everything he could to help her is not controverted, but she admitted on cross examination that, after her sentencing, she had no conversations with Ely about appealing;

2. Likewise, there is no evidence that Ely "consulted" with petitioner about an appeal

---

[6] Based on the findings that follow, it is not necessary to address whether an appeal by petitioner would be frivolous. It seems petitioner's argument concerning how predicate offenses are calculated has been foreclosed by the Fourth Circuit's decision in *United States v. Samuels*, 970 F.2d 1312 (4th Cir. 1992).

10

once she was sentenced, but the preponderance of the evidence reflects the two had discussions about her making every effort to provide substantial assistance as a basis for a later motion by the government for a sentence reduction. The preponderance of the evidence reveals that the two specifically discussed petitioner's avoiding taking any action which could be construed by the government as not accepting responsibility or not providing substantial assistance;

3. Petitioner twice was informed in open court of her right to appeal, once before the Magistrate Judge at the plea proceeding, and once before the presiding District Judge, at the sentencing hearing. The instructions to petitioner about her right to appeal were clear and informative and provide a substitute for Ely's duty to consult;

4. Any failure to specifically consult with petitioner, under the circumstances of this case, did not constitute performance by counsel which was either objectively unreasonable or prejudicial to petitioner in that the outcome likely would have been different. The instructions provided by both the Magistrate Judge and the District Judge substituted for any failure of Ely to consult; and

5. Ely's counsel to petitioner was not ineffective under *Strickland*.

## RECOMMENDATION

For the foregoing reasons, the undersigned hereby RECOMMENDS that an Order enter DENYING petitioner's motion to vacate her sentence and DISMISSING this action from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof.

11

Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U. S. Magistrate Judge

2/21/06
Date